IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINE MAKRAM EBEID, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 25-411J |
| | ) | |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| WARDEN OF THE MOSHANNON VALLEY PROCESSING CENTER, *et. al.*, | ) ) ) | Re: ECF No. 1 |
| | ) | |
| Respondents. | ) | |

## **MEMORANDUM OPINION**

Petitioner Antoine Makram Ebeid ("Petitioner") is an immigration detainee who, at the initiation of this matter, was held at the Moshannon Valley Processing Center ("MVPC") in Phillipsburg, Pennsylvania.[1] Petitioner submitted a "Petition for Habeas Corpus" (the "Petition") on November 13, 2025. ECF No. 1. In the Petition, Petitioner challenges his lengthy immigration detention pursuant to 8 U.S.C. § 1231(a), and seeks release. Id. at 17. See also ECF No. 9 at 8. For the reasons that follow, the Petition will be granted.[2]

**I.    RELEVANT BACKGROUND AND FACTS**

In the Petition, Petitioner alleges that he is a native and citizen of Egypt. ECF No. 1 at 4. Petitioner entered the United States on a B-1 visitor visa in 1999, and overstayed its duration. Id.; ECF No. 6 at 2. The record indicates that Petitioner was found to be removable pursuant to INA

---

[1] Since this case began, Petitioner has been transferred to the Miami Correctional Center in Indiana. ECF No. 6 at 16. This transfer occurred without prior notice to this Court, and without its approval. Be that as it may, it was effected well after the filing of this case, and does not divest this Court of jurisdiction. See Anariba v. Dir. Hudson Cnty. Corr. Ctr., 17 F.4th 434, 448 (3d Cir. 2021).

[2] The Parties consented to the jurisdiction of a United States Magistrate Judge. ECF Nos. 5 and 10.

§ 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), by an Immigration Judge ("IJ") on March 10, 2004.[3] ECF No. 1 at 10-11; ECF No. 1-2 at 1-2; ECF No. 6 at 2; ECF No. 6-1 at 1-2. On the same date, Petitioner was denied asylum, but was granted withholding of removal to Egypt. ECF No. 1 at 10-11; ECF No. 1-2 at 1-2; ECF No. 6 at 2; ECF No. 6-1 at 1-2. Accordingly, Petitioner may not be removed to Egypt. 8 U.S.C. § 1231(b)(3). The parties agree that the order is administratively final. The record does not indicate that Petitioner has been ordered removed to a third country, or that a third country has agreed to take Petitioner.

Petitioner alleges that he was released from detention upon the conclusion of his immigration proceedings in 2004, and has cooperated with immigration authorities ever since. ECF No. 9 at 6. This changed on April 21, 2025, when Petitioner was arrested and detained by immigration agents after he was charged in stated court with Aggravated Assault and for weapon violations. Id. at 5; ECF No. 1-3 at 1; ECF No. 6-1 at 2. The record indicates that those state criminal charges were dismissed on May 19, 2025. ECF No. 1-3 at 1. Respondents do not dispute the outcome of these charges in their Answer. Petitioner has been in immigration detention since his arrest on April 21, 2025.

Petitioner has received two administrative reviews of his current detention. The first was on July 17, 2025, the result of which was the Petitioner was not released because he had not proven that he was not a flight risk. ECF No. 6-4 at 1-3.

The second was on October 16, 2025, at which release was denied because "ICE is actively working with the Department of State and the Department of Homeland Security on removal to a

---

[3] Rather than citing to the United States Code, and for reasons that are unclear, immigration officials tend to cite directly to sections of the Immigration and Nationality Act ("INA"). These citations often do not match up to the United States Code in any discernable fashion. In order to avoid unnecessary confusion, this Court will provide parallel citations to the United States Code and the INA where necessary.

third country." ECF No. 6-5 at 1. While the decision does not say so explicitly, Respondents characterize this to mean that "Third Country Removal is likely to occur in the reasonably foreseeable future." ECF No. 6 at 9 and ECF No. 6-1 at 3 (emphasis in original). This likely refers to ICE's alleged requests to Jordan, Saudi Arabia, and Morocco, to accept Petitioner on or about June 4, 2025. ECF No. 6-1 at 2. Respondents concede that Morocco denied its request on or about June 10, 2025. Id. The record does not indicate that Jordan or Saudi Arabia ever received this request or responded thereto.

As of the date of this writing – nearly four months after ICE denied Petitioner's last administrative request for release because removal was likely to occur soon, and eight months with no third country indicating its willingness to accept him – Petitioner has not yet been removed. Instead, he has remained in immigration detention for more than nine months.

The Petition was filed on November 13, 2025. ECF No. 1. Respondents answered on January 8, 2026. ECF No. 6. Petitioner's Traverse was filed on January 30, 2026. ECF No. 9.

The Petition is ripe for consideration.

## II.    DISCUSSION

28 U.S.C. § 2241 allows a court to grant a writ of habeas corpus to a prisoner held "in violation of the Constitution or laws or treaties of the United States[.]" Id. at § 2241(c)(3). This Court has jurisdiction to hear the merits of the instant case under that statute. Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). See also Roe v. Oddo, No. 25-cv-128J, 2025 WL 1892445, at *4 (W.D. Pa. July 9, 2025) (holding that 8 U.S.C. § 1252(g) did not strip the court of jurisdiction since it was "examining the contest of Petitioner's detention" and not "reviewing Petitioner's removal order.").

8 U.S.C. § 1231(a) states, in pertinent part:

> [(1)(A)] Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
>
> \*\*\*
>
> [(2)(A)] During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.
>
> \*\*\*
>
> [(6)] An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

Once the 90-day removal period of Section 1231(a) has passed, and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute[,]" and the alien must be released. Zadvydas, 533 U.S. at 699. "Indefinite, perhaps permanent, detention" is not authorized. Id. To the contrary, the United States Supreme Court has found that interpreting the statute to allow for indefinite detention would raise "a serious constitutional threat[.]" Id.

Thus, in Zadvydas, the Supreme Court interpreted Section 1231(a)(6) to limit post-removal order detention to a period "reasonably necessary to bring about that alien's removal from the United States." Id. at 689. The Court found that a post-removal order detention period of six months was "presumptively reasonable[;]" however, beyond those six months, if removal no longer is reasonably foreseeable, continued detention becomes unauthorized. Id. at 701.

"After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. Thus, an alien is not necessarily entitled to release at the conclusion of six months of post-removal order detention. Instead, the Department of Homeland Security may continue detention until no significant likelihood of removal in the reasonably foreseeable future exists. Id. But "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

Here, Petitioner has been held for more than nine months in immigration detention. He has been granted withholding of removal from his country of origin, precluding his removal there.[4]

---

[4] Respondents attempt to undercut Petitioner's argument by citing to Gathiru v. Banieke, No. 15-4247, 2016 WL 6436621, at *2 (D. Minn. Oct. 28, 2016) (incorrect page number and date cited in Respondents' Answer, and corrected herein), and Chen v. Banieke, No. 15-cv-2188, 2015 WL 4919889, at *4 (D. Minn. Aug. 11, 2015), for the proposition that the mere passage of time cannot satisfy Petitioner's burden to show that removal is unlikely. But neither of those cases involved a petitioner who had been granted withholding of removal from his country of origin. Instead, in Gathiru, the District of Minnesota found that the evidence of record showed that ICE had been in conversations with officials representing the country of which that petitioner was a native and citizen, and reasonably expected the issuance of travel documents based on those conversations. 2016 WL 6436621, at *2.

Likewise in Chen, the District of Minnesota found that the petitioner had not met his initial burden under Zadvydas because:

> The record indicates that ICE has undertaken reasonable efforts to secure Chen's removal, including requesting a travel document from the Chinese government within a month of his ordered removal and, when that document did not issue within the anticipated timeframe, meeting with Chinese delegates to resolve repatriation issues, signing an updated repatriation memorandum of understanding, resubmitting its request for travel documents in accordance with China's demands, and pleading for a "prompt response" to that renewed request so Chen could "be scheduled to depart the United States." (See Doc. No. 12, Attach. 1 at 50, 54, 60; Hartfield Decl. ¶¶

(continued . . .)

Further, there is no indication on the record that Petitioner has any ties to any third country, or that any third country otherwise has expressed a wiliness to accept him, or has begun preparing travel documents. In light of the very specific facts of Petitioner's case, the undersigned concludes that he has met his burden under Zadvydas.

Respondents do not submit much in the way of rebuttal. At best, their argument is that, after eight months, Jordan and Saudi Arabia have not explicitly denied ICE's request to accept Petitioner. But there is no indication that these countries are considering it at all. This is insufficient evidence to "rebut [Petitioner's] showing." Zadvydas, 533 U.S. at 701. "A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." Escalante v Noem, No. 25-cv-182, 2025 WL 2206113, at *4 (quoting Kane v. Mukasey, No. 08-cv-037, 2008 WL 11393137, at *5 (S.D. Tex. Aug. 21, 2008), superseded by 2008 WL 11393094 (S.D. Tex. Sept. 12, 2008) (a new report and recommendation was entered denying the petition as moot because petitioner was deported prior to the order adopting the report), adopted by 2008 WL 11393148 (S.D. Tex. Oct. 7, 2008)).

Additionally, while they do not assert it explicitly as a basis to deny relief on the merits, ECF No. 6 at 7-12, Respondents spend significant resources discussing Petitioner's "criminal history." Id. at 2-3; ECF No. 6-2 at 1-16. The vast majority of this history is comprised of parking tickets and moving violations. The Court is mindful that Petitioner was charged with Loitering for

---

5–6.) The record further indicates that China ordinarily issues travel documents to aliens like Chen whose Chinese nationality has been verified.

2015 WL 4919889, at *5.

Here, Petitioner cannot be removed to his country or origin, and there is no indication that any other county has expressed a willingness to accept him. Accordingly, Gaithru and Chen are easily and obviously distinguishable from the facts of the instant case.

the Purposes of Engaging in Prostitution in 2011, but that offense was amended, and Petitioner ultimately was convicted of violating a local ordinance against Obstruction of an Entry. ECF No. 6-3 at 1. Petitioner also was charged with Aggravated Assault and weapons violations in 2025, but those charges were quickly dismissed on the prosecution's motion. ECF No. 1-3 at 1-3. As the parties should be well aware, this history – such as it is – does not support Petitioner's lengthy civil detention under Zadvydas. 533 U.S. at 690-91 ("we have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections. [. . . .] In cases in which preventive detention is of potentially indefinite duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger.").

This Court therefore finds that, under Zadvydas, Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and Respondents have not "respond[ed] with evidence sufficient to rebut that showing." Id. at 701. Petitioner's continued detention is not authorized by Section 1231. The writ will be granted directing Petitioner's release from custody, subject to appropriate conditions in accordance with 8 U.S.C. § 1231(a)(3).

### III.    CONCLUSION

For the reasons set forth herein, the Petition, ECF No. 1, will be granted.

A certificate of appealability is not required for federal detainees seeking relief under Section 2241. Muza v. Werlinger, 415 F. App'x 355, 357 n.1 (3d Cir. 2011). See also 28 U.S.C. § 2253(c)(1). Therefore, it is not necessary to determine whether one should be issued here.

An appropriate Order follows.

Dated: February 4, 2026

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of record (*via* CM/ECF)